UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JERRY ALLEN BLACKWELL,

                Petitioner,

v.

LES PARISH,

                Respondent.

_____/

Case No. 1:18-cv-251

Honorable Robert J. Jonker

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jerry Allen Blackwell is incarcerated with the Michigan Department of Corrections at the Thumb Correctional Facility in Lapeer County, Michigan. Following a three-day jury trial in the Eaton County Circuit Court, Petitioner was convicted of assault with intent to murder, felon in possession of a firearm, and felony-firearm. On February 23, 2014, the court sentenced Petitioner to concurrent prison terms of 32 years, ten months to seventy years, three months for his assault conviction, and five to ten years for his possession conviction. Those sentences were to be served consecutively to a two-year sentence on the felony-firearm conviction.

On March 1, 2018, Petitioner timely filed his habeas corpus petition raising eleven grounds for relief, as follows:

I.    [Petitioner] was denied his constitutional right to a speedy trial and was denied the right to be tried within 180 days when, through no fault of [Petitioner's], trial did not commence in a timely manner due to the fault of the prosecution.

II.   [Petitioner] was denied the right to due process and fundamental fairness to present a defense when the trial court refused to allow evidence that Kenneth Roberts carried a gun when selling drugs.

III.  [Petitioner's] conviction for assault with intent to murder should be vacated when his right to the effective assistance of counsel was violated when trial counsel failed to request the lesser-included instruction of assault with intent to do great bodily harm.

IV.   [Petitioner] was denied the right to due process and a fair trial when the prosecution's key witness was granted a plea deal that was not disclosed.

V.    [Petitioner] is entitled to resentencing because the statutory sentencing guidelines were misscored as to offense variables, which affected the statutory sentencing guideline range.

VI.   [Petitioner] was denied the effective assistance of counsel on appeal in violation of the First and Sixth Amendments of the United States Constitution [and] Michigan 1963 Art. 1, § 3 & 20, where appellate counsel failed to directly motion the trial [court for a new trial] and an evidentiary hearing.

VII.  [Petitioner] was denied due process when he was convicted of assault with intent to commit murder based on insufficient evidence where the element of intent was not proven beyond a reasonable doubt.

VIII. Trial counsel's overall representation of [Petitioner] fell below an objective standard of reasonableness, and the culmination of trial counsel's errors and omissions, including his failure to investigate, undermined confidence in the outcome of [Petitioner's] trial.

2

IX.    The trial court reversibly erred in denying a defense motion for direct[ed] verdict when the prosecution in violation of [Petitioner's] Sixth Amendment did not prove the element of intent beyond a reasonable doubt.

X.    [Petitioner] is entitled to a new trial for violation of his right to counsel, where there was a breakdown in the relationship with counsel, and the trial judge refused his request for the appointment of new counsel.

XI.    [Petitioner] was denied his Sixth Amendment right to the effective assistance of appellate counsel and his Fourteenth Amendment right to a full and fair appeal of right where appeal counsel omitted significant and obvious issues on [Petitioner's] appeal of right that were clearly stronger than the issues counsel did raise on [Petitioner's] direct appeal.

(Pet., ECF No. 1, PageID.3-5.)  Respondent has filed an answer to the petition (ECF No. 7) stating that the grounds should be denied because they are without merit or procedurally defaulted.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit.  Accordingly, I recommend that the petition be denied.

## **Discussion**

### I.    **Factual allegations**

On March 16, 2013, after some negotiation by telephone, Kenneth Roberts planned to sell two ounces of marijuana for $500.  Julius Young, Vabian Ford, and Petitioner approached Roberts' vehicle in a mall parking lot to consummate the transaction.  Petitioner hopped in the passenger seat of Robert's vehicle.  According to Roberts, Petitioner pulled a gun and stole the marijuana.  Roberts said he grabbed

for the gun, but instead got Petitioner's clothing.  As a result, as Petitioner exited the vehicle, Roberts was pulled across the front seat and partially out the passenger door. Then, Petitioner turned and shot Roberts.  Two of the four people who were present during the shooting testified: Roberts and Young.  Both testified that Petitioner took the marijuana and shot Roberts.

Petitioner's counsel argued that the scenario described by Roberts and Young did not make sense and that the entry and exit wounds did not match up with Roberts' version of events.  (Trial Tr. III, ECF No. 8-12, PageID.930-940.)  Petitioner's counsel suggested that the circumstances were more consistent with one of the other participants shooting Roberts.  (*Id*.)  Even though the testimony of Roberts and Young was not contradicted by other testimony, the jury deliberated for several hours before it returned its verdict of guilty on all charged counts.  (*Id*., PageID.974-982.)

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences raising five issues, the same issues raised as habeas issues I-V.  (Pet'r's Appeal Br., ECF No. 8-17, PageID.1208-1210.)  By opinion issued June 16, 2015, the Michigan Court of Appeals affirmed the trial court.  (Mich. Ct. App. Op., ECF No. 8-17, PageID.1181-1189.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the same five issues plus one new issue, the issue raised as habeas issue VI.  (Pet'r's Appl. for Leave to Appeal, ECF No. 8-16, PageID.1059-1079.) By order entered March 29, 2016, the supreme court denied leave to appeal as to all

issues, but one.  (Mich. Order, ECF No. 8-16, PageID.1058.)  With respect to Petitioner's complaint that the trial court had impermissibly based the sentence on "judge-found" facts, in lieu of granting leave to appeal, the supreme court reversed the court of appeals decision and remanded the case to the trial court to determine if the court would have imposed a materially different sentence if the sentencing guidelines were discretionary rather than mandatory.  (*Id.*)  The trial court determined it would have imposed the same sentence even if the guidelines were discretionary; accordingly, it reaffirmed the sentence.  (Eaton Cty. Cir. Ct. Op. & Order, ECF No. 8-15.)

Petitioner filed a motion for relief from judgment in the trial court raising five issues, the same issues raised as habeas issues VII-XI.  (Pet'r's Mot. for Relief from J., ECF No. 8-13.)  By opinion and order issued September 27, 2016, the trial court denied relief because the court concluded Petitioner could have raised the issues on direct appeal but he failed to do so and he did not establish cause for that failure or resulting prejudice.  (Eaton Cty. Cir. Ct. Op. & Order, ECF No. 8-14.)  Petitioner sought leave to appeal that decision in the Michigan Court of Appeals and then the Michigan Supreme Court.  Those courts denied leave by orders entered March 8, 2017, and February 20, 2018, respectively.  (Mich. Ct. App. Order, ECF No. 8-18, PageID.1339; Mich. Order, ECF No. 8-19, PageID.1418.)  Thereafter, Petitioner filed the instant petition.

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act
of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal
habeas 'retrials'" and ensures that state court convictions are given effect to the
extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An
application for writ of habeas corpus on behalf of a person who is incarcerated
pursuant to a state conviction cannot be granted with respect to any claim that was
adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a
decision that was contrary to, or involved an unreasonable application of, clearly
established federal law as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based upon an unreasonable determination of the
facts in light of the evidence presented in the state court proceeding."  28 U.S.C.
§ 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575
U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States
Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and
not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000);
*Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal
law is clearly established, the Court may not consider the decisions of lower federal
courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir.
2002).  Moreover, "clearly established Federal law" does not include decisions of the

6

Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of

rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);

*Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324

F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.   This presumption of

correctness is accorded to findings of state appellate courts, as well as the trial court.

*See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4

(6th Cir. 1989).

## III.    Speedy trial

Petitioner's contention that his convictions were unconstitutional because of a

"speedy trial" violation falls short under the AEDPA standard.   In *Brown v.*

*Romanowski*, 845 F.3d 703 (6th Cir. 2017), the Sixth Circuit Court of Appeals

reviewed the clearly established federal law with respect to the constitutional

requirement for a speedy trial:

> The Sixth Amendment guarantees in relevant part that "[i]n all criminal
> prosecutions, the accused shall enjoy the right to a speedy and public
> trial." U.S. Const. amend. VI.  These rights apply to the states through
> the Fourteenth Amendment.  *Klopfler v. North Carolina*, 386 U.S. 213,
> 223 (1967).  The purpose of the speedy-trial guarantee is to protect the
> accused against oppressive pre-trial incarceration, the anxiety and
> concern due to unresolved criminal charges, and the risk that evidence
> will be lost or memories diminished.  *Doggett v. United States*, 505 U.S.
> 647, 654 (1992); *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986);
> *United States v. MacDonald*, 456 U.S. 1, 7-8 (1982); *Barker v. Wingo*,
> 407 U.S. 514, 532-33 (1972); *United States v. Marion*, 404 U.S. 307, 320
> (1971); *United States v. Ewell*, 383 U.S. 116, 120 (1966).  The sole
> remedy for a violation of the speedy-trial right is dismissal of the
> charges.  *See Strunk v. United States*, 412 U.S. 434, 439-40 (1973);
> *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999).

> In *Barker*, the Supreme Court established a four-factor test for determining whether a defendant has been denied the constitutionally guaranteed right to a speedy trial.  Barker held that a court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530.  No one factor is dispositive.  Rather, they are related factors that must be considered together with any other relevant circumstances. *Id*. at 533.

*Brown*, 845 F.3d at 712.  The *Barker* Court acknowledged that its test was a flexible balancing test that "necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." *Barker*, 407 U.S. at 529-30.  The flexibility of the test has significant implications for this Court's review under the AEDPA standard.  " 'The more general the rule at issue' – and thus the greater the potential for reasoned disagreement among fair-minded judges – 'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.' " *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The Michigan Court of Appeals, in rejecting Petitioner's speedy trial claim, faithfully applied the *Barker* four-factor test.  With regard to the length of the delay, the appellate court stated :

> "When the delay is more than 18 months, prejudice is presumed, and the prosecution must show that no injury occurred.  When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice." *Rivera*, 301 Mich. App. at 193 (internal citation omitted).  The time for judging whether a defendant's constitutional right to a speedy trial has been violated "runs from the date of the defendant's arrest." *Williams*, 475 Mich at 261.
>
> Defendant was arrested on March 27, 2013, and his trial was originally scheduled to begin on September 23, 2013.  However, the prosecutor requested an adjournment on September 17, 2013, and trial did not

begin until December 9, 2013.   Thus, the time period between defendant's arrest and trial was approximately nine months. Defendant claims that the length of delay factor weighs in his favor because his trial was approximately two and a half months beyond a 180-day period after his arrest.   Again, this argument is misplaced, as the constitutional right to a speedy trial is not violated simply because a certain number of days has expired.   *Rivera*, 301 Mich. App. at 193.   A delay of less than nine months is not particularly lengthy or noteworthy. See *People v. Cain*, 238 Mich. App. 95, 112; 605 N.W.2d 28 (1999) (discussing much longer delays).

In *Barker v. Wingo*, 407 U.S. 514, 530 (1972), the United States Supreme Court explained that "[t]he length of the delay is to some extent a triggering mechanism.   Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."   As noted, we presume prejudice after a delay of 18 months.   *Rivera*, 301 Mich. App. at 193.   And, with regard to prejudice, defendant has made no effort to argue that the delay was prejudicial. We could end our analysis here, particularly where defendant has not even made an effort to allege that he was prejudiced by the delay in this case. See *Barker*, 407 U.S. at 530. See also *Williams*, 475 Mich. at 262.

(Mich. Ct. App. Op., ECF No. 8-17, PageID.1183.)

The court of appeals went on to consider the reason for the delays, determining that there were delays caused by the prosecution, delays caused by the defense, and delays caused by docket congestion.   (*Id*., PageID.1183-1184.)   The court concluded, therefore, that "the second factor—the reason for the delays—[did] not weigh heavily in favor of either the defendant or the prosecution."   (*Id*., PageID.1184.)

The third factor, Petitioner's assertion of his right to a speedy trial, did not weigh in Petitioner's favor either.   The court found that Petitioner consented to one adjournment and asked for another, he did not assert his speedy trial right prior to trial, nor did he raise a speedy trial violation until he was sentenced.   (*Id*.)

10

Finally, with regard to prejudice, the appellate court noted that Petitioner had not identified any prejudice resulting from the delay between his arrest and trial.

The Michigan Court of Appeals' balancing of the four factors does not appear to be unreasonable.  The length of delay in this instance was not remarkable.  "[A] delay is presumptively prejudicial when it approaches one year."  *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007).  Delays of less than a year, on the other hand, might be so ordinary that they do not even trigger analysis of the other factors. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992).  Indeed, the Sixth Circuit has suggested that a "ten-month delay . . . is likely right at the line to trigger an analysis of the remaining factors."  *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007). Under federal constitutional analysis, therefore, Petitioner's nine-month delay might be so short that further analysis is not required.  That was the appellate court's conclusion in Petitioner's case.  Nonetheless, the court considered the other factors.

The court of appeals' factual determinations regarding the reasons for delay and Petitioner's assertion of his speedy trial rights are well-supported by the record. With regard to prejudice, the *Barker* Court identified three specific categories of harm that might accrue to a pretrial detainee because of undue delay in proceeding with trial: "(i) . . . oppressive pretrial incarceration; (ii) . . . anxiety and concern of the accused; and (iii) . . . the defense [could] be impaired."  *Barker*, 407 U.S. at 532 (footnote omitted).  Despite multiple opportunities to identify prejudice resulting from the delay, Petitioner has not done so.

11

Petitioner indicates his disagreement with the court of appeals assessment of the *Barker* factors.  (Pet'r's Reply Br., ECF No. 9, PageID.1486-1490.)  But, he does not identify any factual determinations that are unreasonable on this record, nor does he demonstrate that the court of appeals' determination of the speedy trial issue is contrary to, or an unreasonable application of, *Barker*.  Instead, Petitioner focuses on the prosecution's failure to try him within 180 days of his arrest.  That fixed time—180 days—is material under the Michigan constitution, Mich. Const. 1963 art.1, § 20; state statute, Mich. Comp. Laws § 768.1; and court rule, Mich. Ct. R. 6.004(D), but it is not the bellwether of unconstitutionality under the United States Constitution. *People v. Cain*, 605 N.W.2d 28, 111 (Mich. Ct. App. 1999); *People v. McLaughlin*, 672 N.W.2d 860, 867 (Mich. Ct. App. 2003).

The state appellate court's determinations regarding the state constitutional, statutory, and rule implications of the delay in Petitioner's case conclusively resolve those matters.  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

The Michigan state courts apply the *Barker* four-factor test "to determine if a pretrial delay violated a defendant's right to a speedy trial[,]" whether the speedy trial right at issue arises from federal or state law.  *Cain*, 605 N.W. 2d at 39 (citing *People v. Collins*, 202 N.W.2d 769 (Mich. 1972)).  Thus, although the state courts

apply the clearly established federal law—the *Barker* test—to evaluate "speedy trial" claims, they apply it a little differently than the federal courts.  The state courts shift the burden of proof with respect to prejudice based on the length of the delay, drawing the line at 18 months. *Cain*, 605 N.W. 2d at 39.

The federal courts, however, applying *Barker* as a matter of federal constitutional law, eschew such a "bright-line rule." *Brown*, 845 F.3d at 717.  Instead, the federal "courts must conduct a functional analysis of the right in the particular context of the case." *Id.* (quoting *United States v. Ferreira*, 665 F.3d 701, 709 (6th Cir. 2011) (quoting *Barker*, 407 U.S. at 522)) (internal quotation marks omitted).  This is a difference between the federal and state applications of the test, but the difference does not render the state court's application unreasonable or contrary to *Barker*. *See, e.g., Brown v. Bobby*, 656 F.3d 325, 329-30 (6th Cir. 2011) (court concluded Ohio's use of a 270-day rule was not "contrary to" *Barker*).  Thus, it cannot be said that the state courts applied the wrong standard in evaluating Petitioner's "speedy trial" claim or that the state courts applied it inconsistently with *Barker*.

The court of appeals concluded that, in balancing the factors, the pretrial incarceration was not sufficiently oppressive to establish a speedy trial violation. Whether this Court would weigh the factors the same way is immaterial.  All that matters is whether or not Petitioner has shown that the court of appeals' determination was objectively unreasonable.  He has failed to make that showing.  To the contrary, the Michigan Court of Appeals' factual determinations and its application of the *Barker* test, the clearly established federal law, were eminently

13

reasonable on this record.  Accordingly, Petitioner is not entitled to habeas relief on his speedy trial claim.

## IV.    Exclusion of evidence that the victim carried a gun when selling drugs

Petitioner next argues that the trial court violated his due process rights, preventing Petitioner from presenting a complete defense, when the court excluded evidence of the victim's prior conviction for carrying a concealed weapon or from asking whether the victim carried a gun when he sold drugs.  Petitioner argued that the victim's propensity to carry a gun when selling drugs might somehow reduce Petitioner's culpability for bringing a gun to the drug deal.  The trial court concluded that such evidence was inadmissible under Rules of Evidence 404, 608, and 609. (Trial Tr. I, ECF No. 8-9, PageID.267-268.)  The Michigan Court of Appeals upheld the exclusion under Michigan Rule of Evidence 401, concluding that the evidence Petitioner wanted to present was simply irrelevant.  (Mich. Ct. App. Op., ECF No. 8-17, PageID.1185-1186.)

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle*, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the

14

Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard.

Petitioner attempts to elevate the evidentiary exclusion to a due process violation by claiming that the court's action prevented Petitioner from raising a defense. The Supreme Court has determined that a criminal defendant has the right to a "meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984), *quoted in Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006). The right is derived from the Sixth Amendment rights to compel and confront witnesses and from the Due Process Clause of the Fourteenth Amendment. *See Holmes*, 547 U.S. at 324; *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Chambers v.*

15

*Mississippi*, 410 U.S. 284, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process law.").

The Supreme Court, however, repeatedly has recognized that the right to present a defense is subject to reasonable restrictions.  *See United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (the Sixth Amendment does not confer on the accused an "unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers*, 410 U.S. at 295; *see also Wong v. Money*, 142 F.3d 313, 325 (6th Cir. 1998).

> [S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.  Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve."  Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*Scheffer*, 523 U.S. at 308 (internal citations omitted).  Thus, "well-established rules of evidence [that] permit trial judges to exclude evidence" under certain circumstances are unlikely to violate a defendant's constitutional rights.  *Holmes*, 547 U.S. at 326.  Trial judges must make many evidentiary rulings during the course of a trial and "the Constitution leaves to the judges who must make these decisions wide latitude to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues."  *Crane*, 476 U.S. at 689-90.

The Michigan Court of Appeals rejected Petitioner's claim:

> Evidence that the victim had a prior conviction for carrying a concealed firearm was not relevant in this case.   That the victim had been convicted of carrying a concealed firearm nearly two years before the shooting at issue had little, if any, bearing on defendant's claim that he possessed a handgun during the shooting for his protection from the victim.   Further, the evidence would only be relevant if defendant established that he knew the victim had the conviction or otherwise carried a firearm when he sold drugs.  Defendant did not establish as much when arguing for the relevancy of the evidence at trial, and on appeal, he makes no assertion that he ever knew the victim had a conviction for carrying a concealed weapon.  Moreover, even if defendant knew that the victim was convicted of carrying a concealed handgun in the past, such knowledge was of little relevance to defendant's intent at the time of the shooting in this case, given the evidence produced at trial. Indeed, the trial testimony indicates that the victim was unarmed at the time of the incident, and that defendant likely shot him in the back. Defendant's assertion of error is meritless.

(Mich. Ct. App. Op., ECF No. 8-17, PageID.1185-1186.)

A court's exclusion of irrelevant evidence is never arbitrary or disproportionate.  Indeed, the right to present evidence discussed in *Scheffer* is the "right to present **relevant** evidence." *Scheffer*, 523 U.S. at 308 (emphasis added). Moreover, the appellate court's determination that the evidence Petitioner sought to introduce was irrelevant is well supported on this record.  Petitioner fails to offer any explanation as to how the victim's possession of a weapon years prior to Petitioner's crime would offer him a defense to brandishing his own weapon during the course of the robbery or to shooting the victim in the back as Petitioner made his escape from the vehicle, particularly in the absence of any indication that Petitioner knew about the victim's prior possession of a weapon.

Petitioner has failed to demonstrate that the state courts' determinations are unreasonable on this record or contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on this claim.

## V.    Lesser-included offense instruction

Petitioner argues he was denied his constitutional rights because the jury was not instructed on the lesser-included offense of assault with intent to do great bodily harm.  Petitioner claims that counsel's failure to request the lesser-included offense instruction constituted ineffective assistance of counsel.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  The petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.

18

Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential because the *Strickland* standard and the standard of review under § 2254 both call for substantial deference.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

In Michigan, the critical distinction between an assault with intent to murder and an assault with intent to do great bodily harm is the intent to kill.  *People v. Brown*, 703 N.W.2d 230, 237 (Mich. Ct. App. 2005).[1]  The intent to kill may be inferred from the weapon used, the wounds inflicted, the acts and words of the defendant, or any other circumstance.  (Trial Tr. III, ECF No. 8-12, PageID.970) (trial court's

---

[1] An intent to do great bodily harm, if death results, would be murder, but that does not mean that an intent to do great bodily harm is an intent to kill.  *Brown*, 703 N.W.2d at 236-37; *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998).

reading of Michigan Model Criminal Jury Instructions 16-21).  Assault with intent to do great bodily harm is a necessarily lesser included offense to assault with intent to commit murder.  (Mich. Ct. App. Op., ECF No. 8-17, PageID.1186) (citing *Brown*, 703 N.W.2d at 230).

The Due Process Clause requires providing lesser included offense instructions in *capital* cases.  *Beck v. Alabama*, 447 U.S. 625 (1980).  Lesser-included offense instructions were also required in *noncapital* cases under the English common law, and they are still required under the common law or by statute in every state and in the federal courts, if and when the evidence supports it.  *Id.* at 633-34, 636 n.11, 12.

Even though the courts of this nation are in complete accord as to the propriety of lesser-included offense instructions, the Supreme Court has never held that lesser-included offense instructions are required as a matter of constitutional due process in noncapital cases.  *Id.* at 638 n.14; *see also Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc) ("[The] failure to instruct on lesser-included offenses in noncapital cases [is not] such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure[.]").  Thus, a state court's failure to read a lesser-included offense instruction cannot be contrary to, or an unreasonable application of, clearly established federal law.

In *Keeble v. United States*, 412 U.S. 205 (1973), the Supreme Court identified why lesser-included offense instructions might augur to the benefit of a criminal defendant:

20

> [I]t is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction.   True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal.   But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory.  Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.   In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault.  Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented.  But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright.   We cannot say that the availability of a third option— convicting the defendant of simple assault—could not have resulted in a different verdict.

*Keeble*, 412 U.S. at 212-13.   The *Keeble* court's identification of the potential significance of a lesser-included offense instruction in a noncapital case did not prompt the *Keeble* court to protect that interest through the Due Process Clause. Nonetheless, it is clear that the lesser-included offense instruction in Petitioner's case had the limited significance identified by the *Keeble* court.

The jurors in Petitioner's case faced a *Keeble* situation where, if they were wavering with respect to the "intent to kill" issue, they were left with an "all or nothing" choice between conviction and acquittal.   But, "all or nothing" is "a legitimate trial strategy." (Mich. Ct. App. Op., ECF No. 8-17, PageID.1186.)  Counsel did not base Petitioner's defense on the claim that the prosecutor's proofs fell short with regard to the intent of the shooter to kill the victim; instead, he based the defense on a claim that the prosecutor had failed to show that Petitioner was the shooter:

21

Defendant's theory of defense was that he was not guilty of any offense at all.  During closing argument, counsel asserted that the victim's and Young's testimony that defendant was the shooter was not credible, and maintained that the evidence did not support the prosecution's theory of the case.  Defense counsel suggested that, given video surveillance showing where Young was standing during the incident and inconsistencies in witness testimony, Young may have been the person who shot defendant.  It was reasonable for defense counsel to argue, based on the medical and forensic evidence, that defendant was not the shooter, or at least that the shooting did not happen as described by Young and the victim.  The witnesses' testimony about the position of the victim's body at the time of the shooting was complicated, and could have given rise to different conclusions about how the victim was shot.  Defense counsel's decision not to request a lesser included offense instruction in favor of persuading the jury that defendant did not shoot the victim was not constitutionally deficient.

(*Id.*)

Counsel's decision to pursue an all or nothing approach is explained further by Petitioner's response to the prosecutor's plea offer asking Petitioner to plead guilty to a charge of assault with intent to do great bodily harm.  If Petitioner wanted that result—and the more favorable sentencing grid it entailed—he had that opportunity and rejected it.  The only reason to proceed after rejecting the offer would be the prospect of an acquittal.  To offer the jury a chance to adopt the compromise position that Petitioner had already rejected would make no sense.  Petitioner took a chance. It did not work to his benefit.  But, "[a] particular strategy does not constitute ineffective assistance of counsel simply because it does not work."  (*Id.*, PageID.1187.)

The "all or nothing" strategy identified by the Michigan Court of Appeals presents a reasonable argument that counsel satisfied the requirements of *Strickland*.  Under the doubly deferential standard that applies to such claims,

nothing more is required.  Petitioner is not entitled to habeas relief on this ineffective assistance of counsel claim.

### VI.    Undisclosed plea deal with a key witness

When witness Young testified at Petitioner's trial, Young represented that he did not have a plea deal with the prosecutor.  Petitioner contends that Young had some undisclosed deal with the prosecutor to dismiss the charges against Young in exchange for Young's testimony.

The Michigan Court of Appeals concluded that the record did not support Petitioner's claim:

> There is no support for defendant's assertion that the jury was misled about any alleged consideration Young received in exchange for his testimony.  At trial, Young testified that he had been charged with several felonies for his role in this offense and that he had not received any promises from the prosecution in exchange for his testimony.  Defendant argues that the jury was thus led to believe that Young would be prosecuted and "convicted for his involvement" in the victim's shooting.  However, according to defendant's "information and belief," Young has not yet been convicted of any felony.  Defendant asserts that if Young's case was in fact dismissed, the prosecution's failure to inform him of a deal between Young and its office was a violation of defendant's right to due process.  Defendant's argument is based entirely on speculation, as he acknowledges that it is only his "belief" that Young testified pursuant to a deal with the prosecution.  There is no evidence that there was such a deal and therefore, defendant cannot demonstrate that he was denied his right to due process.  See *People v. Elston*, 462 Mich. 751, 762; 614 N.W.2d 595 (2000) ("As the appellant [ ], defendant bore the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated.").

(Mich. Ct. App. Op., ECF No. 8-17, PageID.1187.)

Petitioner has restated this issue as a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), contending that the prosecutor failed to disclose the plea deal with witness Young.  Under *Brady*, "suppression by the prosecution of evidence favorable

to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  The Supreme Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 281 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009).

No matter how Petitioner reconfigures his claim, he has not offered anything to support his contention that Young and the prosecutor had a deal at the time of Petitioner's trial.  The evidence allegedly withheld is not evidence at all; it is mere speculation on Petitioner's part.  The state appellate court's determination to that effect is eminently reasonable on this record and Petitioner has failed to show that the court of appeals' rejection of his claim is contrary to, or an unreasonable application of *Brady*.  Accordingly, he is not entitled to habeas relief on this claim.

## VII.  Mis-scored offense variables

Petitioner challenges the court's scoring of two offense variables (OVs): OV4 regarding psychological injury to the victim and OV9 regarding the number of victims who were placed in danger of injury.  With regard to OV4, the Michigan sentencing

guidelines call for assessment of 10 points if there is serious psychological injury to a victim and 0 points if there is not.  Mich. Comp. Laws § 777.34.  With regard to OV9, the Michigan sentencing guidelines set out a sliding scale.  If only one person is placed in danger, the guidelines call for assessment of 0 points.  Mich. Comp. Laws § 777.39. If 2 to 9 persons are placed in danger, the guidelines call for assessment of 10 points. *Id*.  If more than 10 persons are placed in danger, the guidelines call for assessment of 25 points.  *Id*.

The Michigan Court of Appeals concluded that there was a preponderance of the evidence that the victim had suffered severe psychological injury within the meaning of the Michigan sentencing guidelines.  (Mich. Ct. App. Op., ECF No. 8-17, PageID.1188.)  With regard to OV9, the trial court scored 10 points because the victim and Petitioner's two co-offenders had been put in danger by Petitioner's conduct. (Sentencing Tr., ECF No. 8-11, PageID.820-821.)  The court of appeals, though it cited Michigan Supreme Court authority indicating that it was appropriate to count co-offenders under Mich. Comp. Laws § 777.39, did not address whether the trial court's inclusion of the co-offenders as "persons put in danger" under OV9 was proper.  (Mich. Ct. App. Op., ECF No. 8-17, PageID.1189.)  Instead, the appellate court concluded that any error was harmless because, even if OV9 were scored at 0, Petitioner would fall within the same minimum sentencing grid under the Michigan guidelines:  225 to 562 months.  (*Id*.)

Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).  There are circumstances that might render a guideline scoring issue cognizable on habeas review.  For example, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).

Petitioner does not claim that the trial court relied on false information when it determined the victim suffered severe psychological injury; he claims that the injury identified by the trial court does not rise to the level of severe psychological injury under the statute.  That issue, however, arises entirely under state law.  As noted above, this Court has no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 1.  The Sixth Circuit recognizes " 'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.' " *Stumpf v.*

*Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). *See also Thomas v. Stephenson*, 898 F.3d 693,700 n.1 (6th Cir. 2018) (same).  Thus, the appellate court's determination that Petitioner's scoring challenge regarding OV4 has no merit—that the injury suffered by the victim amounted to severe psychological injury as contemplated by the statute—is binding on this Court.  *Wainwright*, 464 U.S. at 84.

Similarly, Petitioner does not claim that the trial court relied on false information when it included his co-offenders in the category of person put in danger by Petitioner's conduct.  Instead, Petitioner claims that co-offenders should not be counted under state law.  The Michigan Supreme Court has concluded otherwise, *see People v. Laidler*, 817 N.W. 2d 517 (Mich. 2012), and the court of appeals acknowledged that authority. (Mich. Ct. App. Op., ECF No. 8-17, PageID.1189.)  But, that was not the final basis for the court of appeals' rejection of Petitioner's claim. The court rejected Petitioner's claim because any error was harmless. (Mich. Ct. App. Op., ECF No. 8-17, PageID.1189.)

"State courts' harmless-error determinations are adjudications on the merits, and therefore federal courts may grant habeas relief only where those determinations are objectively unreasonable." *O'Neal v. Balcarcel*, 933 F.3d 618, 624 (6th Cir. 2019) (citing *Davis v. Ayala*, 135 S. Ct. 2187, 2198-99 (2015)).  Moreover, the appellate court's determination that no prejudice could result where the scored guidelines fall into the minimum sentence range of 225 to 562 months whether the OV9 score is 0 or 10 is logically unassailable.  Whether the trial court exercised its discretion to

select a minimum sentence from a range of 225 to 562 months based on an OV score of 100 points or exercised its discretion to select a minimum sentence from a range of 225 to 562 months based on an OV score of 110 points simply does not matter. Therefore, the appellate court's determination is reasonable and forecloses habeas relief.

Petitioner also contends his OV4 score warrants habeas relief because of the ineffective assistance of his counsel. Offense Variable 4 was originally scored at 0 points, but the court ultimately scored it at 10 points because of Petitioner's counsel. The transcript reflecting this change reads as follows:

> THE COURT:    Now on offense variable four, currently it is scored at zero and the request was that that be scored at ten, and the court agrees that should be scored at ten. So I'm changing OV four from zero to ten. All right, Mr. Freeman? Your client is raising his hand. He may need to speak with you.
>
> [Petitioner's counsel]:    Thank you, Your Honor. It should be noted for this record that it was I who reviewed the pre-sentence report, saw that that, I think it says psychological injury to a victim, was scored at zero points. But as this court knows and the prosecuting attorney knows, there are but two scores, ten or zero. Surely anyone who has suffered a gunshot wound and . . . who was transported by ambulance and underwent at least two surgeries and was in the hospital for a few weeks and rehab afterwards, et cetera, I can't for the life of me understand why that individual would not suffer psychological injury and I cannot see that any other score other than ten should be awarded. I don't want that to be perceived as though I am not a zealous advocate on behalf of my client, but I am also an officer of the court and if I see what I believe to be clearly an error, whether typographical or an oversight, it seems to me I have a responsibility to bring it to the court's attention

28

| | |
|---|---|
| | and ultimately leave it to the discretion of the court as to award the points.  May it please the court. |
| THE COURT: | And I appreciate that, Mr. Freeman, and you're absolutely right.   And just so you realize, Mr. Blackwell, that while Mr. Freeman has zealously advocated for you, as an officer of the court a glaring mistake such as that should be brought to the court's attention, attention and that's the ethical and appropriate thing to do, and Ms. Park agreed.  So that means I've changed the OV total to 100.   It changed it to a level six, and modified the guideline minimum range to 225 to 562. |

(Sentencing Tr., ECF No. 8-11, PageID.806-808.)  When Petitioner challenged the effectiveness of his counsel for advocating a 10-point increase in Petitioner's offense variable score, the court of appeals stated: "[D]efense counsel had a duty of candor toward the court, even if adherence to that duty adversely affected defendant.  See MRPC 3.3.  Defense counsel was not ineffective for upholding this duty."  (Mich. Ct. App. Op., ECF No. 8-17, PageID.1189.)

The court of appeals' conclusion that Michigan Rule of Professional Conduct 3.3 imposed a duty upon Petitioner's counsel to "correct" the OV4 score is, most assuredly, a very broad reading of the obligations created by that rule.  But, it is Michigan's rule and it is the duty of the state courts to interpret it.  The state court's interpretation of its own rules is binding upon this Court.  Accordingly, this Court can only conclude that counsel's exercise of candor to the tribunal in Petitioner's case was appropriate professional conduct.  "Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable . . . ."  *Strickland*, 466 U.S. at 687; *see also Diing v. Howes*, No. 1:09-cv-1058, 2012 WL 1413039, at *10 (W.D. Mich. Mar. 28, 2012) (report and

recommendation adopted 2012 WL 1805499 (W.D. Mich. Apr. 23, 2012)) ("Conduct mandated by the Rules of Professional Conduct clearly cannot support a claim of ineffective assistance of counsel." ).

Moreover, even if Petitioner's counsel crossed the line, any error was harmless. According to *Brecht v. Abrahamson*, 507 U.S. 619 (1993), for reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Id*. at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).  Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict' " or, in this instance, Petitioner's sentence.  *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

As the court of appeals notes, the 10-point assessment for OV4 was required under state law.  Additionally, even if Petitioner's OV score were reduced by 10 points to correct an error by counsel, Petitioner would remain in the same sentencing grid and have the same minimum sentence range.  Such an error would be harmless.  *See, e.g., United States v. Charles*, 138 F.3d 257, 268 (6th Cir. 1998) ("Because the sentence range would be identical even if this court adopted Charles's assertions on the proper amount of drugs he sold, any calculation errors on the part of the district judge would constitute harmless error."); *United States v. Dyer*, 478 F. App'x 308, 309 (6th Cir. 2012) ("[D]enying Dyer's motion on this ground amounted to no more than harmless error because applying the two-level reduction would not have lowered his sentencing

guidelines range."); *United States v. Punschke*, 247 F. App'x 789, 794 (6th Cir. 2007) ("[A]ny error in counting this conviction would be harmless error. That is, whether defendant is assessed two or three criminal history points, his criminal history category would still be II. As a result, any error in counting his conviction would have no affect [sic] on the defendant's sentencing guideline range.")[2].

The determination that any error was harmless under *Brecht* necessarily means that it is not prejudicial under *Strickland*. *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976), materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*); *see also Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016) ("[O]ur previous analysis of *Strickland* prejudice applies to the assessment of whether the Confrontation Clause violation was harmless error under *Brecht*."); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) ("Because we find the error to be harmless [under *Brecht*] Bell cannot meet the prejudice requirement of *Strickland* . . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019, at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error [under *Brecht*] at best, he cannot establish that he suffered prejudice [under *Strickland*].").

---

[2] The standard of "harmlessness" in the cited cases is likely the direct review standard of *Chapman v. California*, 386 U.S. 18 (1967), rather than the collateral review standard of *Brecht*. That distinction, however, does not call for a different result. Where the correction of a miscalculation does not alter the guideline range, the error is harmless under either standard.

Accordingly, Petitioner cannot prevail on his ineffective assistance of counsel claim related to the OV4 scoring under either *Strickland* prong.

Finally, Petitioner attempts to convert his garden-variety state-law guidelines scoring issue into one cognizable on habeas review by claiming that all the offense variable scores were based on "judge-found" facts in violation of Petitioner's Sixth Amendment rights.  Petitioner bases his argument on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.   *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt."  *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined its conclusion with regard to the state sentencing guideline scheme in *Blakely* would also apply to the federal sentencing guidelines.  One group of five justices concluded that the federal sentencing guidelines ran afoul of the Sixth Amendment.  Another group of five justices determined the appropriate remedy was to make the guidelines discretionary.

Subsequently, in *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences.  Petitioner was sentenced in Calhoun County just days before the Supreme Court decided *Alleyne*.  He was sentenced in Eaton County about one year after *Alleyne*.

At the time Petitioner was pursuing his appeal, however, the Michigan Court of Appeals had already concluded that *Alleyne* only prohibited judicial factfinding used to determine a mandatory minimum sentence; it had no impact on judicial factfinding in scoring the sentencing guidelines producing a minimum range for an indeterminate sentence, the maximum of which is set by law.  *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. App. 2013).  The Sixth Circuit also suggested that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment and, as a consequence, the question was not a matter of clearly established Supreme Court precedent.  *Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that

increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .") (emphasis added).  The Sixth Circuit has since clarified that "Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018).

As Petitioner's case wound its way through Michigan's appellate courts, the Michigan Supreme Court granted leave to appeal on an application that raised the *Alleyne* issue.  *People v. Lockridge*, 846 N.W.2d 925 (Mich. 2014).  The Michigan Supreme Court decided the *Herron* decision was wrong, reasoning that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne.*  *People v. Lockridge*, 870 N.W.2d 502, 506 (Mich. 2015) (emphasis in original).  As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional. The Court's remedy, consistent with *Booker*, was to make the guidelines advisory only.  *Id.* at 520-21.

The Michigan Supreme Court made its holding in *Lockridge* applicable to cases still "pending on direct review."  *Id.* at 523.  Petitioner's cases were still pending on direct review at the time the *Lockridge* court reached its decision.

The *Lockridge* court identified a limited group of defendants that might demonstrate the potential for plain error sufficient to warrant a remand to the trial

court: "defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure . . . ."  *Id.* at 522 (footnote omitted).  If a remand was appropriate, the supreme court called upon the trial court, on remand, to determine if it "would have imposed a materially different sentence but for the unconstitutional restraint . . . ."  *Id.* at 524.  The supreme court remanded Petitioner's case for resentencing.

On remand, the trial court concluded that, even free of the unconstitutional restraint of mandatory minimum sentencing guidelines, it would not have imposed a materially different sentence and, indeed, reaffirmed Petitioner's sentence under the discretionary guidelines.  (Eaton Cty. Cir. Ct. Order, ECF No. 8-15, PageID.1057.) Any Sixth Amendment problem created by mandatory sentencing guidelines at Petitioner's initial sentencing hearing was corrected on remand.  Accordingly, Petitioner is not entitled to habeas relief.

## VIII.  Intent to murder

Petitioner contends there was insufficient evidence that he intended to kill the victim.  A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Petitioner reviews the record in a light that favors him, and he concludes that, because he did not say anything to evince an intent to kill, because there was no evidence of a previous relationship that might carry with it an intent to cause harm, and because the gunshot was not premeditated, there is insufficient evidence of

intent.  The trial court twice rejected Petitioner's argument regarding intent, first, when it denied Petitioner's motion for directed verdict at trial and, second, when it determined that all of the grounds Petitioner raised in his motion for relief from judgment were meritless.  (Trial Tr. III, ECF No. 8-12; PageID.955-956, Eaton Cty. Cir. Ct. Order, ECF No. 8-14, PageID.1054.)

What is meant by "intent to kill" is entirely a matter of state law.  It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses.  Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").

With regard to intent, the trial court instructed the jury:

> The defendant's intent may be proved by what he said, what he did, how he did it, or by any other facts and circumstances in evidence. . . . The defendant's state of mind may be . . . inferred from the kind of weapon use, the type of wounds inflicted, the acts and words of the defendant or any other circumstances surrounding the alleged assault. You may infer that the defendant intended to assault if he used a dangerous weapon in a way that was likely to cause death.  Likewise, you may infer that the defendant intended the usual results that follow from the use of a dangerous weapon. A gun is a dangerous weapon. A dangerous weapon is any instrument that is used in any way that is likely to cause serious physical injury or death.

(Trial Tr. III, ECF No. 8-12, PageID.968, 970-971.)   Mr. Young testified that Petitioner got out of the victim's vehicle in a hurried manner. (Trial Tr. II, ECF No.

8-10, PageID.659.)  The victim pursued Petitioner out of the passenger side of the vehicle.  (*Id*.)  Then, Petitioner turned around and shot the victim, "to effectuate [Petitioner's] escape."  (Pet'r's Reply Br., ECF No. 9, PageID.1507.)  The resulting wound was life-threatening.  (Trial Tr. II, ECF No. 8-10, PageID.579-580.)

The evidence indicated that Petitioner, for the purpose of effecting his escape, deliberately pointed a gun at the victim and pulled the trigger, causing a life-threatening wound.  Viewed in a light that favors the prosecution, and given the state-law elements and permitted inferences, that evidence was sufficient to support the jury's determination that Petitioner intended to kill the victim.  Accordingly, the trial court's determination, at trial and when resolving Petitioner's motion for relief from judgment, that Petitioner's sufficiency challenge has no merit is well-supported by the record and is neither contrary to, nor an unreasonable application of, *Jackson*.  Accordingly, Petitioner is not entitled to habeas relief on his challenge to the sufficiency of the evidence regarding his intent to kill.

### IX.   Failure to appoint new counsel

Prior to trial, the prosecutor extended a plea offer to Petitioner: in exchange for Petitioner's plea of guilty to a reduced charge of assault with intent to do great bodily harm, the prosecutor would dismiss the assault with intent to murder charge and agree to a minimum sentence of 152 months.  (Final Pretrial Tr., ECF No. 8-6, PageID.241.)  Petitioner rejected the plea offer, but his counsel recommended that Petitioner take it.  (Trial Tr. I, ECF No. 8-9, PageID.277.)

When counsel and Petitioner considered the plea offer, counsel discussed with Petitioner recent discussions with prosecution witness Dr. Larry Ansari, the physician who treated the victim at the hospital. (*Id.*, PageID.285-286.) The victim suffered two bullet wounds, one on his back and one on his front. It was apparent that both wounds were caused by one bullet; however, the nature of the wounds did not support a definitive conclusion regarding which wound was the entry wound and which wound was the exit wound. Counsel and Petitioner had decided to capitalize upon that uncertainty to cast doubt on the account offered by the victim and Young— that the bullet entered the victim's back because he was sprawled across the seat and partially outside the passenger door. Petitioner would suggest to the jury that if a passenger in a vehicle shot the driver, the bullet would likely have entered the victim's front and exited his back. (*Id.*, PageID.277-286.)

Counsel's discussions with Dr. Ansari immediately before the trial indicated that the expert's testimony would not foreclose the planned approach, but would not fully support it either. Counsel communicated that concern to Petitioner.

On the first day of trial, after the court resolved some preliminary jury instruction and evidentiary issues, Petitioner announced that he wanted to fire his counsel. (*Id.*, PageID.277.) Petitioner told the court that his counsel suddenly seemed to lack confidence in Petitioner's defense because counsel advised accepting the plea and appeared poised to abandon the entry wound/exit wound defense. (*Id.*, PageID.277-284.) Counsel then indicated that he did not plan to abandon the

defense, only that his most recent discussions with Dr. Ansari provided less support

for the defense than counsel had hoped for.  (*Id.*, PageID.284-286.)

The trial court rejected Petitioner's request for substitute counsel:

The court is going to deny the defendant's motion for a new attorney. The law in Michigan is, is very clear.  In the published decision out of the Court of Appeals, People versus Strickland 293 Mich App 393, the Court of Appeals indicates that:

"If a defendant asserts that his assigned defense counsel is not adequate or diligent or is disinterested the trial court is required to hear the defendant's claim and if there is a factual dispute take testimony and state its findings and conclusions."

In this case the defendant has stated that his oppo, that his request to have new counsel is based on two things.  The first being that initially this morning that he felt that Mr. Freeman was not as, I guess, confident in his defense as he had been.  However, in his testimony a few moments ago he raised the issue which has to do with being a, a tactical decision regarding the defense that he would be utilizing in this case.

Contrary to what the defendant stated Mr. Freeman intends to continue with the defense regarding the bullet entry and exit wound and has not changed the defense strategy that he and the defendant talked about leading up to the trial, including last week.

The court concludes that really the defendant might have some general unhappiness with Mr. Freeman because he reaffirmed to the defendant this morning that it was not too late to take a plea.  But a general unhappiness in that regard, as the defendant has expressed, is insufficient ground to appoint new counsel.

A defendant is not entitled to counsel of his or her choice or different counsel just because of those reasons and in fact the court is not supposed to grant a request to appoint new counsel if it was going to disrupt the judicial process.

In this case we have all of the witnesses lined up.  We have the jury panel ready to come up.  And the court finds that it would disrupt the judicial process to appoint new counsel at this point when the defendant has not articulated a reason for that request other than what the court would characterize as possibly a general unhappiness.  But there is no tactical decisions that have been changed. Mr. Freeman is extremely

40

prepared to move forward. And on that basis the court is denying the request and we will move forward.

(Trial Tr. I, ECF No. 8-9, PageID.286-288.)

Petitioner claims the trial court erred in denying his request for new counsel, but he now offers an entirely new reason for his request.  At trial, Petitioner claimed he wanted new counsel because he believed counsel intended to abandon the "entry wound/exit wound" argument.   Now, Petitioner claims he wanted new counsel because his counsel intended to pursue the "entry wound/exit wound" argument. (Pet'r's Reply Br., ECF No. 9, PageID.1525.)  Petitioner's facile reversal in reasoning casts doubt on the validity of his argument.

The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense."  U.S. Const., Amend. VI.  One element of that right is the right to have counsel of one's choice.  *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006).  The right to counsel of choice is not without limits, however.  *Id.* at 148; *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007). "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *Gonzalez-Lopez*, 548 U.S. at 151 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988), and *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)).  "'An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.'"  *Mooneyham*, 473 F.3d at 291 (quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)); *see also Caplin & Drysdale*, 491 U.S. at 624 ("[T]hose who do not have the means to hire their own lawyers have no cognizable

complaint so long as they are adequately represented by attorneys appointed by the courts."). Thus, where a court is faced with a defendant's request to effect a change in his representation by way of a motion to substitute counsel, the court must determine whether there is good cause for the substitution.   *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

To determine whether there is good cause for substitution of counsel, the Sixth Circuit looks to: "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between he attorney and the client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) balancing the factors with the public's interest in the prompt and efficient administration of justice." *United States v. Steele*, 919 F.3d 965, 973 (6th Cir. 2019) (quoting *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001)).  The state court's consideration of Petitioner's request for substitute counsel took into account all of the appropriate considerations.  The record supports the trial court's conclusion that Petitioner's motion came very late in the proceedings, that there was really no conflict between Petitioner and his counsel, and that the public interest favored proceeding to trial.   Moreover, the court's inquiry into Petitioner's request was thorough.

Petitioner has failed to show that the trial court's rejection of his request for substitute counsel was based on unreasonable factual determinations.  Indeed, it is the fact offered by Petitioner—that he wanted to change counsel because counsel intended to pursue the "entry wound/exit wound" argument—that is patently

unreasonable on this record.  Petitioner has likewise failed to show that the trial court's denial of the request was contrary to, or an unreasonable application of clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## X.    Ineffective assistance of trial counsel

In addition to the claims of ineffective assistance of trial counsel discussed above, Petitioner raises three additional instances where his counsel failed him: (A) counsel failed to file a motion for directed verdict, a motion for judgment notwithstanding the verdict, and a motion for new trial, all premised on the prosecutor's failure to produce sufficient evidence of Petitioner's intent to kill; (B) counsel failed to prepare for the preliminary examination, repeatedly postponed and rescheduled the examination, and ultimately encouraged Petitioner to waive the preliminary examination to avoid an additional charge of armed robbery; and (C) counsel provided improper advice regarding the plea offer.   Each claim is discussed below.

### A.    Failure to file motions

When the trial court denied Petitioner's motion for relief from judgment, it determined that each one of Petitioner's ineffective assistance of trial counsel claims lacked merit.   Indeed, Petitioner's claim that counsel failed to file a motion for directed verdict is just flat out wrong.  Counsel made such a motion and it was denied. (Trial Tr. III, ECF No. 8-12, PageID.947, 955-956.)

Moreover, in light of the denial of that motion and the lack of merit to Petitioner's sufficiency argument,[3] motions for judgment notwithstanding the verdict or for new trial premised on the insufficiency claim would have failed.  Counsel's failure to make a frivolous or meritless argument does not constitute ineffective assistance of counsel.  *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010).  Accordingly, Petitioner cannot show that the trial court's rejection of his ineffective assistance claim is contrary to, or an unreasonable application of, *Strickland*.

## B.  Failure to prepare for preliminary examination

Petitioner complains that counsel postponed and rescheduled the preliminary examination twice.  Then, according to Petitioner, "[t]he prosecutor threatened Mr. Blackwell that if he did not waive his preliminary examination, then [an] armed-robbery charge would be added."  (Pet'r's Reply Br., ECF No. 9, PageID.1514.)  Petitioner contends that counsel's lack of preparation and then advice to waive the preliminary examination amounts to "abandonment at a critical stage."  (*Id.*)  As a result, Petitioner was forced "to forego the opportunity to confront and test the veracity of the evidence through cross-examination."  (*Id.*)

There is no federal constitutional right to a preliminary hearing.  *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965).  Moreover, "a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause."  *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975).  Not having a preliminary examination is not, in and of itself, prejudicial.

---

[3] See § X infra.

The only consequence Petitioner identifies from counsel's conduct is the loss of the opportunity to confront and test the evidence.   But, Petitioner had every opportunity to confront and test the veracity of the evidence at trial.   Petitioner does not explain how the lost opportunity to do so preliminarily had any effect on the judgment.   Accordingly, he has failed to show any prejudice as contemplated by *Strickland*.   Under the circumstances, the trial court's conclusion that this claim of ineffective assistance of counsel lacked merit is entirely consistent with clearly established federal law.

### C.    Erroneous advice regarding plea offer

Petitioner next argues that he would have taken the plea offer if his counsel had appropriately advised him of the potential consequences of conviction that might follow if he rejected the offer.   Petitioner reports that his counsel and the prosecutor opined that if he were convicted of assault with intent to commit murder his minimum sentence range would be fourteen years, three months to 35 years, seven months.   His statutory maximum sentence could be life imprisonment or any term of years.   Mich. Comp. Laws § 750.83.   As detailed above, however, the calculated minimum sentence range following Petitioner's conviction was eighteen years, nine months to 46 years, ten months.   The plea offer included a set minimum sentence of twelve years, eight months and his maximum sentence, as enhanced by Petitioner's third habitual offender status, would be twenty years.   *See* Mich. Comp. Laws §§ 750.84, 769.11.

In *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), the Supreme Court held that, in a claim alleging that counsel was ineffective in advising a defendant about a plea offer, the *Strickland* standard continues to apply.  As in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the prejudice prong of *Strickland* turns on whether, absent counsel's errors, the result of the plea process would have been different.  *See Lafler*, 132 S. Ct. at 1385-87.  In such circumstances, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel."  *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

It is at best questionable whether Petitioner has shown that his counsel erred in the plea process.  First, counsel encouraged Petitioner to take the plea.  Second, the record does not include any factual support for Petitioner's claim that his counsel or the prosecutor estimated the guidelines as Petitioner suggests.  Third, any estimate regarding the minimum sentence before trial and before preparation of a presentence investigation report is only an estimate.  Neither counsel nor the prosecutor can predict all of the facts that might be disclosed at trial, during the presentence investigation, or during the sentencing hearing.  The Sixth Circuit has recognized that "counsel's inaccurate prediction of the sentencing guideline range, standing alone, does not constitute ineffective assistance of counsel."  *United States v. Awad*, No. 91-1856, 1992 WL 354084, at *1 (6th Cir. Nov. 30, 1992).  Nonetheless, if counsel's prediction could be deemed professionally reasonable, Petitioner's claim that it prejudiced him is disingenuous.

To establish prejudice, Petitioner must show that he would have entered a plea of guilty if he had only known his actual potential sentencing exposure upon conviction. Petitioner's actual sentencing exposure, however, no matter what the guidelines said, was life imprisonment. Moreover, even disregarding the potential life sentence and considering only a term of years sentence based on the guidelines, if a potential minimum sentence of eighteen years, nine months was sufficient to sway Petitioner to take the plea, that sentence could have happened under counsel's estimate. The only possible way counsel's erroneous estimate might have prejudiced Petitioner is if Petitioner believed that he, as a third habitual offender would be sentenced at the lowest end of the minimum sentence range. This would also be contingent upon an assumption that he would have been willing to plead, and thereby give up the possibility of acquittal, when the difference between the bargained minimum and his best case, but highly unlikely, minimum were six years, one month, but not if the difference between the bargained minimum and his best case, but highly unlikely, minimum were one year, seven months. That decision-making process is not an impossibility, but it is certainly far-fetched. Under the circumstances, therefore, the trial court's determination that Petitioner's claim has no merit, whether it is based on a failure to establish professionally unreasonable conduct or a failure to establish prejudice is reasonable and consistent with *Strickland*. Accordingly, Petitioner is not entitled to habeas relief.

## XI.    Ineffective assistance of appellate counsel

Finally, Petitioner contends that his appellate counsel rendered ineffective assistance, first when appellate counsel failed to file a motion to remand to the trial court for a *Ginther* hearing[4] regarding trial counsel's ineffective assistance in failing to request a lesser-included offense jury instruction and second when appellate counsel failed to raise the issues that Petitioner raised in his motion for relief from judgment.  For the reasons stated above with regard to Petitioner's claim relating to a lesser-included offense instruction and with regard to all of the issues Petitioner raised in his motion for relief from judgment, the matters Petitioner contends that appellate counsel failed to raise lack merit.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Therefore, the state courts' rejections of Petitioner's ineffective assistance of appellate counsel claims is neither contrary to, nor an unreasonable application of *Strickland*.  Accordingly, Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.   A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket

---

[4] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record.

denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:   October 23, 2019                    /s/ Phillip J. Green
                                             PHILLIP J. GREEN
                                             United States Magistrate Judge

## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).